IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 AUG 29 PM 5:00

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

SEAN ANTHONY NEWBERG,

    Plaintiff,

vs.

    No. 05-2054-Ml/P

SHERIFF MARK LUTTRELL, et al.,

    Defendants.

---

ORDER CORRECTING THE DOCKET
ORDER GRANTING LEAVE TO AMEND
ORDER ASSESSING $150 FILING FEE
ORDER OF DISMISSAL
ORDER DENYING APPOINTMENT OF COUNSEL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

Plaintiff Sean Anthony Newberg, RNI number 150171, who is currently an inmate at the Shelby County Detention Center ("SCDC")[1] in Memphis, filed a pro se complaint pursuant to 42 U.S.C. § 1983 on January 12, 2005 in connection with his previous confinement at the Shelby County Criminal Justice Complex ("Jail"), where his booking number was 04118656.[2] The Clerk shall record the defendants as Shelby

---

[1] The word "prison" is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses.

[2] This address was obtained from this plaintiff's most recent lawsuits, which were filed on June 20, 2005. In order to facilitate the delivery of the plaintiff's mail, the Clerk is ORDERED to correct the docket to reflect the plaintiff's current booking number.

This document entered on the docket sheet In compliance with Rule 58 and/or 79(a) FRCP on 8-30-05



County Sheriff Mark Luttrell; Lieutenant Henderson; Sergeant Rudd; Grievance Counselor Love; and Shelby County.[3]

Since the commencement of this action, the plaintiff has filed a number of additional documents. On January 27, 2005, plaintiff filed a letter concerning his impending change of address. On February 2, 2005, the plaintiff filed a motion seeking appointment of counsel and an amendment to the complaint.[4] On February 4, 2005, plaintiff submitted additional documents concerning one of his claims.[5] On February 9, 2005, plaintiff repeated his application for appointment of counsel and filed another proposed amendment to his complaint. On March 14, 2005, the Clerk filed a letter from the plaintiff inquiring about the status of the case. Finally, on March 29, 2005, the Clerk filed another letter from the plaintiff inquiring about the status of the case. That letter also sought to amend the prayer for relief to seek injunctive relief. For good cause shown, each of the plaintiff's motions to amend are GRANTED.[6]

---

[3] The Court construes the plaintiff's allegations concerning the Jail as an attempt to assert a claim against Shelby County.

[4] Pursuant to Fed. R. Civ. P. 15(a), plaintiff is entitled to amend his complaint once without leave of Court prior to the filing of a responsive pleading. Accordingly, the Court CONSTRUES the February 4, 2005 filing as an amendment to the complaint.

[5] For reasons that are not clear, the docket sheet indicates this document was filed on February 5, 2005.

[6] Finally, on May 9, 2005, the Clerk docketed a letter from the plaintiff concerning the dismissal of another case he filed concerning the same subject matter, Newberg v. Shelby County, et al., No. 05-2008-B/V (W.D. Tenn. dismissed Apr. 20, 2005), which was dismissed, in part, for failure to exhaust. This letter has no bearing on the instant case, and this Court does not maintain forms that can be used by prisoners to exhaust their administrative remedies.

I.  Assessment of Filing Fee

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay the full filing fee of $150 required by 28 U.S.C. § 1914(a).[7] The in forma pauperis statute, 28 U.S.C. § 1915(a), merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, plaintiff has properly completed and submitted an in forma pauperis affidavit and a certified copy of his trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to plaintiff's account the prison official shall immediately withdraw those funds and

---

[7] Because this action was filed prior to March 7, 2005, the new $250 civil filing fee is inapplicable.

3

forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $150.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify plaintiff's name and the case number on the first page of this order.

If plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order.

If the plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the Jail Director to ensure that the custodian of the plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

## II. Analysis of Plaintiff's Claims

The complaint alleges that the plaintiff has received insufficient exercise, that he has been locked down for excessive periods without the opportunity to bathe or exercise, and that the grievance system has been inadequate to address his complaints.[8] Defendant Rudd is named as a defendant because she supervises the pod officers and relief officers who failed to allow the plaintiff exercise time. Defendant Henderson is named as a defendant because he is in charge of scheduling the gym. Defendant Love is named as a defendant because he allegedly did not afford the plaintiff due process in connection with his grievances. Defendant Luttrell is named in order to hold him responsible for the acts of his subordinates. The plaintiff seeks compensatory and punitive damages.

The Sixth Circuit has held that 42 U.S.C. § 1997e(a) requires a federal court to dismiss a complaint without prejudice

---

[8] This is the second lawsuit the plaintiff has filed concerning these issues. Plaintiff's first action, Newberg v. Shelby County, et al., No. 05-2008-B/V (W.D. Tenn. filed Jan. 3, 2005), was dismissed on April 20, 2005 pursuant to 42 U.S.C. § 1997e(a) and 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is not clear why the plaintiff filed two separate lawsuits.

5

whenever a prisoner brings a prison conditions claim without demonstrating that he has exhausted his administrative remedies. Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731 (2001) (prisoner seeking only money damages must exhaust administrative remedies although damages are unavailable through grievance system). This requirement places an affirmative burden on prisoners of pleading particular facts demonstrating the complete exhaustion of claims. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). To comply with the mandates of 42 U.S.C. § 1997e(a),

> a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.

Id. at 642; see also Boyd v. Corrections Corp. of Am., 380 F.3d 989, 985-96 (6th Cir. 2004) (describing the standard for demonstrating exhaustion when prison officials fail to respond in a timely manner to a grievance), cert. denied, 125 S. Ct. 1639 (2005); Baxter v. Rose, 305 F.3d 486 (6th Cir. 2002) (prisoner who fails to allege exhaustion adequately may not amend his complaint to avoid a sua sponte dismissal); Curry v. Scott, 249 F.3d 493, 503-04 (6th Cir. 2001) (no abuse of discretion for district court to dismiss for failure to exhaust when plaintiffs did not submit documents showing complete exhaustion of their claims or otherwise demonstrate exhaustion). Furthermore, § 1997(e) requires the prisoner to exhaust

his administrative remedies before filing suit and, therefore, he cannot exhaust these remedies during the pendency of the action. Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999). Finally, the Sixth Circuit recently held that district courts are required to dismiss a complaint in its entirety, pursuant to 42 U.S.C. § 1997e(a), that contains any unexhausted claims. Jones Bey v. Johnson, 407 F.3d 801, 805-09 (6th Cir. 2005).

In this case, plaintiff submitted a variety of documents to support his claims. With respect to his claim about a lack of exercise, plaintiff filed a grievance (Grievance No. 99445) on or about November 5, 2004. As plaintiff did not provide a copy of that grievance, it is not possible to verify what it encompassed except that the subject matter was exercise. The matter was deemed grievable and, in response, defendant Love wrote him a memorandum, dated December 2, 2004, stating that, "[d]ue to escape on the jail, the recreation time was modified and awaiting approval. Until the schedule is approved, you will [not] be scheduled to attend the gym." In response, the plaintiff wrote, "Due to your lame excuse I will not grieve for exercise anymore from this day forward. However, I would like to say that other pods have been going and that no excuse is a good excuse when it comes to violating one's humanity and rights." This response was apparently treated as an appeal, as a handwritten note, dated December 3, 2004, states "Rec. time will increase as soon

7

as the outside area is open. The current schedule is designed to give everyone some time."[9]

The plaintiff contends he submitted another grievance (Grievance No. 95150) on or about November 14, 2004 concerning the fact there has been no gym call during the past week. Defendant Love returned this grievance to plaintiff without processing.[10]

Plaintiff has submitted a copy of a grievance (Grievance No. 99794) he allegedly prepared on or about November 16, 2004 concerning inadequate ventilation in his cell. He contends that defendant Love returned it to him without processing, presumably because it was not signed by the pod officer or floor sergeant, as required by policy.

Plaintiff filed a grievance (Grievance No. 99793) on or about November 18, 2004 complaining that, on or about November 15,

---

[9] Plaintiff also submitted a response, dated January 5, 2005, to Grievance No. 104080, stating that, "[s]ince you filed this complaint, you have been relocated to the 4th floor." Plaintiff's response, dated January 8, 2005, states: "Nothing has changed because Lt. Henderson had me relocated to the fourth floor with and through his influence. The problem still remains even on the 4th floor. Although I'm now getting at least 1 hour of exercise for every 168 hours that I am incarcerated that this facility it still remains irregular." It appears that the subject of this grievance was recreation, although the specifics are not provided. It is not clear whether plaintiff's response constituted an appeal and, if so, whether it was resolved.

[10] The explanation for defendant Love's action is apparently contained in several memos he wrote to the plaintiff in connection with other grievances, such as his November 30, 2004 response to Grievance No. 95247, which was submitted by the plaintiff even though it has no relevance to any issue in this case:

> This is an issue that should have been addressed by the pod officer, sergeant, and/or unit manager prior to you filing a formal complaint. **I would recommend that you get the signature of the pod officer or floor sergeant, as stated in the policy, so that they can have the opportunity to resolve this issue.** However, based on the current inmate grievance policy, I will have to make this grievance nongrievable until you follow proper protocol. (Emphasis in original.)

8

2004, he was locked down for approximately twenty-eight (28) hours without a shower. The matter was deemed grievable and defendant Love responded with a memorandum, dated December 3, 2004, stating that "[y]ou are allotted three (3) hours of recreation time each day which is required according to policy and procedures."[11] There is no indication that the plaintiff appealed this response.

Plaintiff filed a grievance (Grievance No. 99821) on or about December 2, 2004 in which he complained that, as of November 30, 2004, he had not had a shower for forty-eight (48) hours because the pod was on lockdown. The grievance states that other inmates were permitted to shower. The grievance further asserts that defendant Henderson made a false entry in the log book concerning this situation. The matter was deemed grievable on December 3, 2004. Defendant Love stated in a memorandum that "[t]he information was forwarded to the unit manager for review and did indicate that there was validity to your complaint and the situation was resolved. However, since you filed this complaint, you were relocated [to] the 4th floor."[12]

Plaintiff filed another grievance (Grievance No. 104082) on or about December 2, 2004 in which he complained that, as of November 29, 2004, he had been in his cell for thirty-one (31) hours without a shower. That grievance states that the officer on duty told inmates

---

[11] The Jail apparently requires inmates to shower during recreation time.

[12] Plaintiff apparently appealed this response. On February 4, 2004, plaintiff filed the response to his appeal, which is dated January 31, 2005. However, this response cannot be considered because inmates are required to completely exhaust their grievances before commencing lawsuits. Freeman, 196 F.3d at 645.

9

that defendant Henderson would be addressing the pod shortly. The matter was deemed nongrievable by defendant Love on December 3, 2004 because the grievance was repetitive of Grievance No. 99821.

Plaintiff filed a third grievance (Grievance No. 104148) on or about December 2, 2004, concerning the lockdown that took place on November 29 and 30, 2004. This grievance stated that Officer Massey said she had no idea why there was a lockdown and that she was not responsible for it. Defendant Henderson also allegedly could not answer why the pod was on lockdown and he allegedly stated that "everyone should just leave it alone." The matter was deemed nongrievable on December 3, 2004 because the grievance was not signed by the pod officer or floor sergeant, as required by policy.

Plaintiff filed a fourth grievance (Grievance No. 99823) on or about December 2, 2004 in which he complained that he had been detained in his cell for fifty-seven (57) hours without recreation. This grievance mentions defendant Henderson, although it says nothing substantive about him except that he "finally addressed the pod as well as Officer Massey." The matter was deemed nongrievable by defendant Love on December 3, 2004 because the plaintiff did not get the signature of the pod officer or floor sergeant, as required by policy.

Plaintiff filed a grievance (Grievance No. 95249) on or about December 3, 2004 in which he complained that, on November 23, 2004, an Officer Morgan, who is not a party to this action, locked down the pod on schedule and threatened to continue the lockdown for seventy-two (72) hours if any inmate complained. Defendant Love

10

deemed the matter nongrievable on December 3, 2004 because the plaintiff did not get Officer Morgan's signature on the grievance. The grievance form states that Morgan was presented with the grievance but refused to sign it.

Plaintiff filed another grievance (Grievance No. 104602) on or about December 6, 2004. That grievance also complains about a failure to correct conditions in response to a previous grievance concerning denial of exercise. The matter was deemed nongrievable on December 15, 2004 because the plaintiff had been relocated within the Jail since the filing of the grievance.

Plaintiff filed a fifth grievance (Grievance No. 104150) on or about December 6, 2004 concerning the lockdown on November 29 and 30, 2004. That grievance complained about a new written policy that inmates violating rules would be more severely punished. The precise subject of this grievance is not clear, although it appears that clean sheets were not promptly issued on orders of defendant Henderson and inmates were told that, because someone, presumably a Jail employee, had been threatened, rules would be strictly enforced. The matter was deemed nongrievable on December 15, 2004 because the grievance was not signed by a pod officer or staff sergeant. Plaintiff wrote on the bottom of the grievance that he was afraid to ask for a signature, although it appears that that response was written on December 15, 2004. The grievance also apparently bears a staff signature as of December 15, 2004. The complaint does not state the ultimate resolution of this grievance.

With respect to the complaint about the adequacy of the grievance process, plaintiff filed a grievance (Grievance No. 100290) on or about November 16, 2004 in which he complained that defendants Henderson and Rudd refused to sign grievances. Defendant Love deemed the matter nongrievable on November 18, 2004, stating in a memorandum that "I have spoken with the unit manager on 19 November 2004 concerning your complaint and he has assured me that the situation will be resolved. If you continue to have problems, request to speak with the unit manager again."

Plaintiff also submitted a grievance (Grievance No. 100292) that he contends he tried to file on or about November 13, 2004 concerning the fact that he had not heard about the resolution of the appeals on Grievance Nos. 50956 and 97132.[13] Defendant Love allegedly refused to accept this grievance for processing, presumably because it was not signed by the pod officer or floor sergeant.

Plaintiff filed a grievance (Grievance No. 104085) on or about November 29, 2004 complaining that he had written a letter to internal affairs ("IAB") concerning matters too complex for the grievance process but had not received a response. Defendant Love responded with a memorandum, dated November 30, 2004, that stated: "Please be patient until you have received a response. Once the Chief reviews your letter, I am sure he will respond accordingly."

---

[13]   The plaintiff has not attached copies of those grievances or described their subject matter.

In his February 2, 2005 filing, the plaintiff submitted copies of letters he received from the Tennessee Department of Correction and the Tennessee Corrections Institute.[14]

In his February 4, 2005 filing, plaintiff submitted the results of his appeal of Grievance No. 99821, dated January 31, 2005, along with his commentary.

In his February 9, 2005 filing, the plaintiff asked for appointment of an attorney to represent him. The plaintiff also submitted another grievance, dated January 31, 2005, and the initial response, dated February 2, 2005. As previously stated, see supra pp. 5, 9 n.10, this grievance cannot be considered because it post-dates the filing of the complaint.

Just as with his first lawsuit concerning this subject matter, plaintiff has not satisfied his burden of demonstrating that he exhausted his administrative remedies on each claim and against each defendant. Plaintiff has apparently not attempted to exhaust his claims against defendants Luttrell and Love, as required by Moorer v.

---

[14] These documents, as well as the plaintiff's complaint to the IAB and his letters to Jail officials, have no bearing on whether he satisfied the requirements of § 1997e(a). The Sixth Circuit has held that an inmate's letters and petitions are no substitute for a formal inmate grievance. Shephard v. Wilkinson, 27 Fed. Appx. 526, 527 (6th Cir. Dec. 5, 2001) ("While Shephard asserts that he has raised his complaints in numerous letters to prison and public officials, a prisoner must utilize the formal grievance process provided by the state; he cannot comply with the requirements of § 1997e(a) by informally presenting his claims."); Hewell v. Leroux, 20 Fed. Appx. 375, 377 (6th Cir. Sept. 21, 2001) (same); see also Clark v. Beebe, No. 98-1430, 1999 WL 993979, at *2 (6th Cir. Oct. 21, 1999) (district court erred in holding that prisoner had substantially complied with exhaustion requirement by writing a letter to the U.S. Attorney's office that eventually made its way to the warden of plaintiff's prison). Similarly, internal affairs investigations do not excuse an inmate from using the inmate grievance process. Curry, 249 F.3d at 504 ("an investigation by a prison Use of Force Committee will not substitute for exhaustion through the prison's administrative grievance procedure"); Freeman, 196 F.3d at 644-45 (investigation by prison Use of Force committee and state highway patrol insufficient).

13

Price, 83 Fed. Appx. 770, 772 (6th Cir. Dec. 9, 2003) (plaintiff did not exhaust claim against warden because his grievance did not identify the warden or articulate any claim against her); Thomas v. Woolum, 337 F.3d 720, 733-34 (6th Cir. 2003); Curry, 249 F.3d at 504. Moreover, plaintiff did not file a grievance against defendant Rudd concerning excessive lockdowns. Instead, the only grievance against Rudd concerned her failure to sign grievances. Thus, plaintiff has not exhausted his primary claim against Rudd.

The Sixth Circuit has stated that "[a] plaintiff who fails to allege exhaustion of administrative remedies through 'particularized averments' does not state a claim on which relief may be granted, and his complaint must be dismissed sua sponte." Baxter, 305 F.3d at 489.[15] Moreover, pursuant to the recent decision in Jones Bey, a district court must dismiss any complaint that contains unexhausted claims rather than attempting to sever the exhausted claims. As a result, a case must be dismissed unless a prisoner has exhausted each of his claims with respect to every defendant named in each claim. Foushee v. Wiggins, No. 3:05CV7108, 2005 WL 1364613, at *3 (N.D. Ohio June 8, 2005).[16] Accordingly, the Court DISMISSES the

---

[15] As the Sixth Circuit explained, "If the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run." Id.

[16] This plaintiff has apparently been hindered in demonstrating that he exhausted his claim by the disorganized manner in which his documents are arranged and the fact that he chose to file two separate lawsuits on the same subject matter that relied on different grievances. The plaintiff is advised that, in the event he chooses to file future lawsuits, he should collect all his documents and arrange them in some logical order prior to submitting the case for filing. In this case, however, the complaint would be subject to dismissal even if the Court examined the numerous grievances filed in case no. 05-2008 because the plaintiff
(continued...)

complaint in its entirety, without prejudice, pursuant to 42 U.S.C. § 1997e(a).[17] In light of the dismissal of this action, the motions for appointment of counsel and a hearing are DENIED.

III. Appeal Issues

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision in forma pauperis. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. Accordingly, it would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, yet has sufficient merit to support an appeal in forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case also compel the conclusion that an appeal would not be taken in good faith.

---

[16] (...continued)
in that case did not exhaust his claims against defendants Luttrell, Henderson, and Rudd. Thus, the failure to exhaust his claims against defendant Luttrell is, in itself, sufficient to warrant dismissal of this complaint.

[17] In case no. 05-2008, the Court proceeded to dismiss certain claims under the merits and to assess a strike pursuant to 28 U.S.C. § 1915(g). Because this case was filed prior to the issuance of the dismissal order in case no. 05-2008, it is not appropriate to assess a second strike concerning the same claims. Nothing in this order is intended to confer on the plaintiff a right to bring suit on any claim that was dismissed on the merits in case no. 05-2008.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith and he may not proceed on appeal in forma pauperis.

The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case.[18] In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, the plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and § 1915(b).

IT IS SO ORDERED this 29 day of August, 2005.

*[signature: Jon P. McCalla]*

JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE

---

[18]   Effective November 1, 2003, the fee for docketing an appeal is $250. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 10 in case 2:05-CV-02054 was distributed by fax, mail, or direct printing on August 30, 2005 to the parties listed.

---

Sean Newberg
SHELBY COUNTY JAIL
04118656
201 Poplar Avenue
Memphis, TN 38103

Honorable Jon McCalla
US DISTRICT COURT